[No. 895.   October 2, 1901.]

## TERRITORY OF NEW MEXICO, Appellee, v. MANUELA OLGUIN DE GUILLEN, Appellant.

### SYLLABUS.

1.   Where, in a murder case, there is evidence which if believed by the jury, would sustain a verdict of guilty of murder in some degree, or where, the court would not disturb a verdict of guilty if returned by the jury, it is not error for the court to overrule a motion to instruct the jury to find the defendant not guilty, at the close of the testimony for the prosecution.

2.   Although the evidence in a murder case may be circumstantial, if the circumstances proven, are such as tend to establish the fact that the defendant committed the deed, and that the killing was perpetrated with a deliberate and premeditated design maliciously to effect the death of the deceased, or was done by an act greatly dangerous to the lives of others and indicating a depraved mind, regardless of human life; it is not error for the trial court to charge the jury as to murder in the first degree.

3.   Where, in a murder case the evidence is circumstantial, and there is no eyewitness testifying as to the actual manner of the killing, it is proper for the court to charge the jury as to murder in the second or such other degree as the evidence tends to establish.

4.   Where in a criminal case there are no formal assignments of error, and the motions for a new trial and in arrest of judgment do not point out specifically wherein error exists in the court's instructions, general exceptions, will not be considered in this court.

Appeal from the district court of San Miguel county on change of venue from Mora county, before WILLIAM J. MILLS, C. J.   Affirmed.

## STATEMENT OF THE CASE.

The appellant was indicted for the murder of her husband, Manuel Guillen, on the twenty-first day of January, 1898, in Mora county, New Mexico. Change of venue was had upon the application of the appellant to San Miguel county, and the case came on for trial in Las Vegas on the twenty-first day of December, 1899. Verdict was returned into court on the twenty-third day of December, 1899, for murder in the second degree. Motions for new trial and in arrest of judgment were overruled, and the court imposed sentence on the appellant of confinement in the Territorial penitentiary for a period of ten years from the first day of March, 1900. Motion for appeal was granted, and the case is now in this court.

The facts in the case, as disclosed by the evidence, which was largely circumstantial, but without substantial conflict, are substantially as follows: That the deceased and the appellant lived in a small house of two rooms with a hall between them, the decedent and appellant occupying one of these rooms, and their son, Frank, and his wife occupying the other; on the night of the sixth day of June, 1898, the deceased slept in a wagon bed which was in front of the house, the appellant occupied one of the rooms of the house alone, and the son and his wife occupying the other.

From the testimony of numerous witnesses, it appears that the deceased was killed with an ax; deep cuts were found upon his head; the ax was found standing beside the wagon bed, and had a considerable amount of blood and hair upon it, the hair corresponding with that of the deceased; the ax with which the murder was committed was the property of the deceased, and was left out at the wood pile a short distance from the wagon bed on the evening before the killing took place; a track of a shoe was found going to where the ax was at the wood pile, and the same track was discovered returning

toward the scene of the crime; this track was made by a sharp pointed woman's shoe, as was testified by several witnesses, and at least one witness testified that the track corresponded with the shoe worn by the appellant which he saw during the coroner's inquest but did not measure.

The testimony of Louis Leruix was to the effect that he had sustained improper relations with the appellant for some three or four years prior and up to near the time of the death of Manuel Guillen; that the appellant had requested him to run away with her which he declined to do; that he and appellant had carried on a clandestine correspondence through the medium of a boy who carried notes for them; that on the Sunday, June 5, 1898, before the killing he had a conversation with the appellant; that he was fixing a wagon tongue preparatory to going to Las Vegas with lumber when he saw appellant standing near the corner of a fence; that appellant motioned to him to come to the brush, and he went there to see what the appellant wanted; the appellant then told him she wanted him to run away with her; that he told her he would not run away with her; the appellant then informed him that "there would not be some one lacking that would run away with her; that she was going to kill her husband in order to run away; that by the time you come back from Las Vegas, you will not find me here." The witness further testified that he went to Las Vegas on Monday and returned from that place to his sawmill on Wednesday morning, and that when he returned he learned that Manuel Guillen was already buried. This witness further testified, that the appellant told him "all the time that she wanted to run away, or kill her husband; that she did not want to live with him," and that on the morning of the sixth when the witness left for Las Vegas she sent a letter to him by a little boy, and the letter informed him that when he got back he would not find her in the place. The evidence further disclosed the fact that the deceased had a dog, and that the dog usually slept beside the wagon bed when

the deceased slept in it, as was often his custom; that this dog was watchful, and while he would not bark at members of the family approaching the house, he would not permit strangers to come about the place without his barking and seeking to drive them away; that on the morning of the seventh the dog was lying by the side of the wagon bed when the people began to assemble there, and that he attempted to prevent one of the neighbors from coming there; Gallegos testifies "that when they came near the wagon bed where the body was, the dog was about to jump at them, and then they got some person there that knew the dog to take him away so we could look at the body; that the dog did not want to be taken away from the wagon bed." The evidence further shows that the dog was not heard to bark or make any noise during the night on which the killing took place.

When the appellant and the witness Leruix were both in jail at Mora, the appellant told one of the jailors that she wished to have him write a note for her to Leruix; and he had the note written; after it was written it was read to the appellant, and she approved of it, and requested it to be handed to Leruix. The note, as disclosed by the record, was as follows: "June 11, 1898. Compadre Luis. Be careful not to discover anything, nor that you had any contradiction with my husband. Any way you have a chance to prove where you were, and do not tell any stories. Manuelita."

The witness, Juan N. Navarro, testified that on the morning of the seventh day of June he was sitting with some other men on the outside of the house where the appellant lived; that the appellant called him, and when he went inside of the house she asked him to do her a favor to loan her enough money to send a dispatch to her father at Raton to advise him about the occurrence that had taken place; she then said that the only thing that she had much feeling for was, that her husband had died under such circumstances, that is, in such a way, but that she could not blame anybody; that they might

keep her in jail forever, or do whatever they might choose to do with her, but she could not blame anybody for the deed.

The appellant did not testify upon the trial in the court below, but she did testify before the coroner's jury substantially that some one threw a fruit can which had some dirt and a plant in it through her window some time during the night on which her husband was killed; she did not know who it was; that she was afraid some one was trying to kill her; that she arose and called to her husband that some one was trying to kill her, but he did not answer, and she went out and found him with blood all over his face; that she called her son and after the son and daughter-in-law had come out and looked at the deceased, the son went to call a man named Agapito, and she and her daughter-in-law went to call a man by the name of Vigil, but so far as the evidence shows neither of these parties came to the house during the night. The daughter-in-law, the only witness testifying for the defense, testified that she heard her mother-in-law walking around in the room and called to the deceased that some one was trying to kill her, and afterwards that her mother-in-law called Frank, her husband, to come and see what was going on. This witness testified that the first noise she heard was when her mother-in-law called Frank, her husband, she testified about her husband going for Agapito and she and her mother-in-law going for Vigil; said that Vigil promised to come, but did not do so; she testified that she did not hear the dog make any noise during that night, and the appellant so stated before the coroner's jury, according to the testimony of the witness Gallegos.

No brief filed by appellant.

HON. E. L. BARTLETT, Solicitor General, for appellee.

In the court below all presumptions and intendments are in favor of the defendant; but the moment he is convicted and the sentence pronounced against him, such presumptions cease, and all presumptions are that the trial and judgment were regular and legal, and he must show here affirmatively that such was not the case.

Leonordo v. Territory, 1 N. M. 302.

It is not for the Solicitor General to invoke the rule in such cases, but for the court to enforce the rule which it has made for the regular and orderly conduct of his business here.

Rule 15, subdivision 4, page 11.

The first error assigned ·ς, that there was no proof to warrant a conviction. If there was any proof from which the jury could find a verdict, this court will not disturb it.

Territory v. Webb, 2 N. M. 148.
Territory v. Maxwell, 2 N. M. 250.
Hicks v. Territory, 6 N. M. 596.
Trujillo v. Territory, 7 N. M. 43-47.

The second error assigned is, "there was no proof to establish the manner in which the killing was done." This is true; and in such cases this court has repeatedly held that the court should instruct in all the degrees of murder, and the jury is to judge of the degree from the testimony given.

Aguilar v. Territory, 8 N. M. 502.
Friday v. Territory, 8 N. M. 208-9.
Salazar v. Territory, 3 N. M. 321.
Padilla v. Territory, 8 N. M. 510.

It is complained that the court erred in giving instruction No. 5. Instruction No. 5 was the one defining murder in each of the three degrees, in the language of the statute, and the defining of the technical words complained of was the giving of the legal definition of the words used in the statute, i. e., feloniously, willfully, deliberately, malice (express and implied), and premeditated malice aforethought.

It was necessary and proper for the court to properly define these terms for the information of the jury, and a failure to do so, might well have been assigned as error.

> Thompson on Trials, sec. 1635 and 2209.
> Sackett on Instructions, 683 et seq.
> Leonardo v. Territory, 1 N. M. 298.
> Territory v. Perea, 1 N. M. 633.

Assignments of error must be definite, pointed and specific, calling the attention of the court to the particular part of the instruction complained.

The remaining assignments are obnoxious to this rule, and are too vague and indefinite to be considered by the court.

> Beall v. Territory, 1 N. M. 518.
> Territory v. Yarberry, 2 N. M. 454.
> Nicholas v. Territory, 3 N. M. 110.
> Proffatt on Jury Trials, sec. 328.
> Wharton's Criminal Pleading & Practice, sec. 709.

"Exceptions to the decision of the court upon any matter of law arising during the progress of the cause, or to the giving or refusing of instructions, must be taken at the time of such decision."

> Compiled Laws of 1897, sec. 3145.
> Territory v. O'Donnell, 4 N. M. 210.
> Territory v. Yarberry, 2 N. M. 454.
> Martin v. People, 13 Ill. 342.
> Sackett on Instructions, p. 638, sec. 15, p. 639, sec. 17, and p. 689.
> Commonwealth v. Goodwin, 14 Gray (Mass.) 55.
> People v. Padilla, 42 Cal. 535.
> Beavers v. State, 58 Ind. 530.
> Locke v. State, 1 Tex. App. 368.
> 2 Thompson on Trials, sec. 2451 and cases cited in note.
> 1 Thompson on Trials, sec. 1003, p. 790.

OPINION OF THE COURT.

McFIE, J.—No assignment of errors was filed in this case, nor does the statute require formal assignment of errors to be made in a criminal case; but it still remains the better practice to do so, that vital error alone may be brought to the attention of this court, otherwise the court is remitted to an examination of the motions for new trial and in arrest of judgment, which too often contain provisions not relied upon by counsel as error, as well as vague and general, such as the court will not consider. In this case, however, there being no formal assignment of errors, the motions for new trial and in arrest of judgment, which are in identical language, will be relied upon as preserving errors alleged to exist in the record, treating them as assignments.

The fourth assignment of error should be first considered, as the error assigned is the refusal of the court to direct a verdict for the appellant upon appellant's motion at the close of the evidence for the Territory. Very little need be said in overruling this assignment of error. This assignment is to the effect that the evidence for the prosecution was not sufficient to warrant a conviction, and that, therefore, the court committed error in refusing to instruct the jury to acquit the appellant at the close of the evidence for the Territory. In order to avoid an unnecessary repetition of the evidence in the case, we have set out quite fully, substantially, all the evidence given upon the trial. From this evidence it is manifest that if the jury believed the evidence given for the prosecution—and it was the province of the jury to determine the credibility of the witnesses and the weight to be given their testimony—there was abundant evidence to warrant a conviction in this case, of murder in some degree. Indeed in our opinion, if the jury, after considering all the evidence given upon the trial, determining the credibility of the witnesses and the weight to be given their testi-

mony, were satisfied of the truth of the testimony on behalf of the Territory, including the testimony of the witness Leruix which revealed not only a motive for the crime, but a deliberate and well considered intention to commit it for a considerable time before and up to the morning before the crime was committed, and if the jury further believed from this evidence that the appellant committed the crime by getting up in the night, going to the wood pile to obtain the ax, and then murdering her husband by the infliction of the blows disclosed by the evidence, while he lay sleeping in the wagon bed, the jury would be fully warranted in finding appellant guilty of murder in the first degree.  If the jury believed the evidence for the prosecution, all of the elements necessary to constitute murder in the first degree were present in the commission of the offense.  Manifestly this evidence was for the consideration of the jury, and not for the court, and if the court had sustained the motion of the counsel for the appellant, the court would have invaded the province of the jury.  This the court properly refused to do.  Such a direction to the jury should never be given, unless upon a conviction the court would set aside the verdict.  This court has repeatedly held that where there is substantial proof, circumstantial or otherwise, from which a jury could properly find a verdict, and which would sustain a verdict when found by a jury, that the court will not disturb the verdict.  In this case the record shows that the court refused to disturb the verdict found by the jury, even after the evidence on behalf of the defense had been heard, and this action of the court is, of itself, a sufficient answer to the fourth assignment of error.  Territory v. Webb, 2 N. M. 148; Territory v. Maxwell, 2 N. M. 250; Hicks v. Territory, 6 N. M. 596; Trujillo v. Territory, 7 N. M. 43.

The first assignment of error, that the verdict was contrary to the law and the evidence, in that there was

not sufficient proof to warrant a conviction of the appellant of murder in the first, or any other degree, is practically the same as the fourth. What we have said concerning the fourth assignment of error is equally applicable to this. This assignment, it is true, goes to the legality of the court's giving an instruction which would authorize the jury to find the appellant guilty of murder in the first degree. The court could not determine what view the jury would take of the evidence in the case, and it depended upon the view taken by the jury of the evidence whether the acts, malice, deliberation and intention necessary to constitute murder in the first degree, as defined by the statute, were established. In defining murder in the first degree, the statute provides, that it shall be murder in the first degree where the offense is perpetrated by any kind of willful, deliberate, premeditated killing, or when perpetrated from a deliberate and premeditated design unlawfully and maliciously to effect the death of any human being, or perpetrated by any act greatly dangerous to the lives of others and indicating a depraved mind regardless of human life. Malice is defined as follows: "Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, and is manifested by external circumstances capable of proof." "Malice shall be implied when no considerable provocation appears, or when all circumstances of the killing show a wicked and malignant heart." If the jury believed from the evidence in this case that the appellant inflicted the fatal blow with the ax, and made threats to kill her husband on many occasions prior to the killing, thus disclosing the intention and motive of the appellant, the jury would have been warranted in returning a verdict of murder in the first degree, because, if the appellant after making such threats, and stating that she did not want to live with her husband, arose from her bed with the intention of killing the deceased, and actually did kill him under the brutal cir-

cumstances disclosed by the evidence, the killing under
such circumstances would be willful, deliberate and pre-
meditated killing, and that there was a premeditated
design unlawfully and maliciously to effect the death of
the deceased, would be a perfectly legitimate conclusion.
The circumstances of the killing also indicated a de-
praved mind regardless of human life, all of which are
clearly within the definition of murder in the first de-
gree. The jury would also be fully warranted in con-
cluding that the killing was malicious within the mean-
ing of the statute of this Territory defining express and
implied malice. It was undoubtedly proper, therefore,
for the court to submit to the jury an instruction upon
the subject of murder in the first degree.

The second assignment of error is also practically
disposed of by what the court has said as to the above
assignments, because it is substantially, that there
was no proof that the murder was committed under
such circumstances as would warrant a conviction
of murder in the second degree, and the court should
not have given an instruction in that degree. The pro-
priety of this instruction, was also dependent upon the
view of the evidence accepted by the jury. In this case
the precise manner in which the blows were inflicted, or
the occurrences immediately preceding them, were not
proven by an eyewitness to the transaction. The evi-
dence in this case is circumstantial, and there was no
eyewitness to the actual manner of the killing. While
a case may arise, where the circumstances are so clear
and convincing as to warrant the court in instructing
the jury as to murder in the first degree alone, and
thereby confining their consideration of the evidence to
that degree, ordinarily in such case, it is proper for the
court to instruct the jury in the other degrees of murder
which the evidence tends to prove. This court has had
this matter before it on several occasions, and has so
held in Salazar v. Territory, 3 N. M. 321; Friday v. Ter-

ritory, 8 N. M. 208; Aguilar v. Territory, 8 N. M. 502;
Padilla v. Territory, 8 N. M. 570.

The propriety of this instruction, of course, de-
pended upon the view taken of the evidence by the jury,
especially of the testimony as to various threats to kill
the husband, which involved the premeditation and
maliciousness of the killing. An attempt was made to
discredit the testimony of the witness, Leruix, who was
the sole witness testifying upon the subject of threats
and intention to kill the deceased. The court when in-
structing the jury in this case, could not determine what
view the jury might take of the testimony of this witness,
or the other witnesses in the case. If the jury refused
to accept the testimony of this witness as to threats of
previous intention to kill, or had reasonable doubts on
this subject, it would be apparent to the court, it being
in their province to so conclude, that the jury might be
unwilling to say in the absence of positive evidence as
to the manner of the killing, that the necessary malice
and premeditated intention to kill had been shown, but
they might still be willing to conclude that the death
was effected in a cruel and unusual manner, or by means
of a dangerous weapon under such circumstances as
would not constitute excusable or justifiable homicide
as provided in section 1064, C. L. 1897, defining murder
in the second degree. From the fact that the jury found
the appellant guilty of murder in the second degree, it
is reasonable to conclude that the jury at least had a
reasonable doubt of the truth of the testimony of the
witness, Leruix, and thus concluding they declined to
return a verdict of murder in the first degree, and
preferred to conclude from the evidence that the killing
was done in a cruel and unusual manner, or by means
of a dangerous weapon under such circumstances as
would not constitute excusable or justifiable homicide.
It follows, therefore, that the giving of the instruction
as to murder in the second degree was not error, under
the circumstances of this case.

The third assignment of error, that there is no proof disclosing express or implied malice, has been in effect considered and need not be further referred to.

The fifth assignment is, that the court erred in its charge in giving to the jury abstract propositions of law, without instructing them in the law's conclusions from the facts which the evidence tended to establish. This assignment does not correctly state the facts disclosed by the record. Counsel base this assignment upon the fact that the court in the fifth paragraph of its instructions set out what constitutes murder, and the different degrees thereof, as the same are defined in the statute, and the court further set out the legal definitions of several technical terms used in the statutory definition of murder, the words "feloniously," "willfully," "deliberately," "malice," "express malice," "implied malice" and "premeditated malice," and we see no legal objection to the course pursued by the court below in this respect. The law should be set out, and set out correctly in instructions to the jury. Bishop in the first volume of his Criminal Procedure, third edition, section 980, says: "That the charge should state the law in its application to the facts already explained correctly and fully. If, for example, there are different degrees of an offense, the law of each degree which the evidence tends to prove should be given, but not of any degree which it does not tend to prove." It is not contended that the law was not stated correctly, but the contention is that it is improper to set out the law of murder as the same is defined in the statute. But the second clause of the assignment is clearly incorrect, because the court in paragraphs 7, 8, 9, 10, 11 and 12 very clearly and fully applies the law as above defined in paragraph five to the facts in the case, and distinctly informs the jury what facts it is absolutely necessary for them to find, established by the evidence and beyond a reasonable doubt, before they would be warranted in finding the appellant guilty of murder in either the first, second, or third de-

gree.    Each degree of murder is taken up in a separate paragraph, and the jury are plainly informed of the distinctive difference between the defined degrees of murder and what facts are essential to be established to warrant a conviction under each degree.    The conclusions of the law, as applied to the facts as the jury might determine them, were clearly stated by the court, and in a manner so plain that there could be no misunderstanding.    This assignment, therefore, is without foundation, and the charge of the court in this respect was clearly correct.

The sixth assignment of error is substantially, that paragraph number five of the court's instructions to the jury should not have been given.    "Because the same is not required by the statute, nor is there any law for giving the same, and the defining of the technical words therein used had a tendency to confuse the minds of the jury and detract their minds from the main issue and was entirely unnecessary in the case."    It is somewhat difficult to understand this assignment of error.    Counsel complain because the court saw fit to explain to the jury the technical words used by the statute in defining the crime of murder, and suggest that such a course is calculated to mislead and confuse the jury.    How the jury could be misled or confused by an explanation of technical terms which they are not supposed to comprehend without the explanation, we are unable to understand. It seems very clear, that the court in defining and making plain the meaning of the technical words of the statute, instead of misleading and confusing the jury, aided them materially in a proper understanding of the law to which they were required to apply the facts, and that it can not be error.    To thus explain the law so as to bring it clearly within the comprehension of the jury is certainly desirable in the trial of any case, that a jury when called upon to apply the facts to the law, shall clearly understand the meaning of the law to which the facts are to be applied, and especially is this true in

regard to technical terms such as were defined by the court in paragraph five of its instructions.    Counsel for appellant do not contend that the definitions given by the court were incorrectly given, but the substance of their position seems to be that it was improper for the court to define these technical terms, even though they were correctly defined.    This position is untenable and the assignment can not be sustained.    Thompson on Trials, section 1635-2209; Sackett on Instructions, page 683 et seq.; Leonardo v. Territory, 1 N. M. 298.

Counsel for the appellant assign for error all of the instructions of the court from number six to twenty-seven, both inclusive, but there is no attempt by counsel to specify in what respect these instructions were erroneous.    All that is said by counsel as to each of these instructions is that the court erred in giving them, numbering them from number six to number twenty-seven, both inclusive.

Our statute relating to the taking of exceptions at the trial is found in section 3145, C. L. 1897.    "Exception to the decision of the court upon any matter of law arising during the progress of the cause, or to the giving or refusing of instructions, must be taken at the time of such decisions.    . . ."

Referring to the record  it is found that the only reference to the taking of exceptions to the instructions of the court in this case is in the following words: "Come now the parties in the above-entitled cause, and attended by their counsel, and hear argument of counsel, instructions of the court, to which defendant now excepts, and in charge of a sworn bailiff, retire to deliberate upon their verdict."    This is the only reference to exceptions being taken that we find in the record or bill of exceptions.    There is no attempt to specify wherein error exists in the twenty-second paragraph of the court's instructions referred to in the motions for new trial and in arrest of judgment, which motions are in the same language, and there being no assignment of

errors, the motions last referred to must be relied upon for the specification of any error which the court is required to pass upon. The mere statement in the motions for new trial and in arrest of judgment that, "The court erred in giving instruction number ——," does not in any manner direct the court's attention to any vice in the instructions, or wherein error exists prejudicial to the appellant. This court has held that it is not incumbent upon this court to search for alleged error, nor will it consider vague and general exceptions, or assignments of error where counsel are either unwilling or unable to indicate specifically wherein error exists.

In the case of Pierce v. Strickler, 9 N. M. 467, in referring to vague and general assignments of error, the court says: "Such assignment indicates the opinion of counsel that the court may by its examination discover some errors as to the admission or rejection of evidence upon which a reversal might be had, rather than that error has actually occurred, and that counsel has discovered and relies upon it."

Exceptions taken during the trial of a cause to the rulings of the court and to the instructions. should specify wherein counsel contend the court has erred, in order that the trial court may be given an opportunity to correct error, prior to the close of the trial, if such has occurred or such errors as are relied upon by counsel for the unsuccessful litigant, should be pointed out in the motion for new trial, that a new trial may be granted the unsuccessful party in case error has actually occurred. In this case counsel have not attempted in their motions for new trial and in arrest of judgment, to direct the court's attention to any specific error in the instructions of the court, except to paragraph five which has been considered. Nor does the record show, that any exception was taken to the overruling of the motions for new trial and in arrest of judgment.

In this case we have felt it incumbent upon us to examine the motion for new trial and in arrest of judgment, to ascertain the errors relied upon by counsel for appellant, and we have considered and disposed of those wherein counsel attempted to specify wherein the error existed.    The vague and general exceptions to paragraphs 6 to 27, both inclusive, of the instructions of the court, we decline to review, for the reason that there has been no attempt to designate wherein error existed in either of these paragraphs.

Leonardo v. Territory, 1 N. M. 301; Territory v. Yarberry, 2 N. M. 454; Territory v. O'Donnell, 4 N. M. 210.

The court is required by the statute to charge the jury of its own motion, and present the case as developed on the trial to the jury, fully and fairly, and while we do not deem it incumbent upon this court to examine the charge of the court fully, because of the vagueness of the exceptions attempted to be taken to all of the instructions, we have examined with some care the charge of the court, and we are of the opinion that the court below in its charge to the jury presented the case in an exceedingly fair, comprehensive and just manner, even from the standpoint of the appellant.    The evidence being circumstantial, the court below was very careful to correctly state the law as to circumstantial evidence, and also to point out clearly under what circumstances a conviction of the appellant would be warranted.    The court devoted five paragraphs to the presentation of this feature of the case, and charged the jury specifically that where the evidence was circumstantial, the facts proved must not only all be consistent with, and point to, the guilt of the appellant, but must be wholly inconsistent with her innocence.    The jury were fully informed that the appellant must be given the benefit of every reasonable doubt, and in the 21st paragraph of the court's charge, it is distinctly stated that if there is any one single fact proved to the satisfaction of the jury, by a

preponderance of the evidence which is inconsistent with the appellant's guilt, it would be sufficient, to raise a reasonable doubt and the jury should acquit the appellant, and in order to justify the inference of legal guilt from circumstantial evidence, the existence of the inculpatory facts must be absolutely incompatible with the innocence of the accused upon any rational theory and incapable of explanation upon any other reasonable hypothesis than that of her guilt.

All of the other issues in the case seem to have been presented by the court to the jury in an equally careful and lucid manner, and the rights of the appellant were carefully guarded in every respect by the charge of the court.

Where the charge of the court presents the whole case fairly and impartially to the jury, the cause will not be reversed upon technical exceptions, or exceptions to isolated portions of the charge.    Pinkerton v. Ledoux, 3 N. M. 403.

The judgment of the court below will be affirmed with costs.

McMillan, Parker and Crumpacker, JJ., concur.

Mills, C. J., having heard the case below did not participate in this opinion.

